UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:  Case No.: 11-52238

**MELETIOS THOMAS GOLEMATIS,**  Chapter 7
**LISA LOUISE GOLEMATIS,**
 HON. WALTER SHAPERO
Debtors.
_____/

## OPINION GRANTING U.S. TRUSTEE'S MOTION TO DISMISS UNDER 11 U.S.C. § 707(b)(3)

The debtors, Meletios Thomas Golematis and Lisa Louise Golematis (hereinafter "Debtors"), filed a voluntary petition under chapter 7 of the U.S. Bankruptcy Code on April 29, 2011. Debtors' obligations are primarily consumer debts, and their nonpriority unsecured debts total $39,515. The United States Trustee (hereinafter "UST") filed a motion to dismiss under 11 U.S.C. § 707(b)(3) on August 4, 2011. In its motion, the UST claimed several of Debtors' expenses were excessive and not reasonably necessary. Specifically, the UST objected to monthly expenses of $1,000 for private school tuition for Debtors' two children; $400 for their children's figure skating, baseball and soccer; $266 for home maintenance; and $169 for a camper. At that point, Mr. Golematis worked full-time as a solo practitioner attorney, and Mrs. Golematis worked as a court clerk at the 28th District Court. Mr. Golematis also worked part-time as a district court magistrate at the 28th District Court. Debtors' reported a net combined average monthly income of $7,358. Their reported average monthly expenses were $7,985, which left them with a monthly deficit of $627.

1

Debtors' financial circumstances changed in January 2012 when Mr. Golematis started working for Hantz consulting LLC (d/b/a QDRO Express LLC), where he suffered a pay cut. Debtors' amended Schedule I indicates that Debtors' net combined average monthly income dropped to $7,064. However, at the March 19, 2012 evidentiary hearing, Debtors' counsel claimed their net combined average monthly income actually fell to $6,239.

After the UST filed the motion to dismiss, Debtors' significantly reduced their expenses. Amended Schedule J shows Debtors reduced their prior monthly tuition expense of $1,000 for private school tuition down to $295.84. They also cut their prior monthly $400 expense for their children's figure skating, baseball and soccer down to $200. Finally, they surrendered their camper. Debtors' amended Schedule J shows monthly expenses totaling $6,911.84. At the evidentiary hearing, Debtors' counsel claimed this amount was inaccurate, and the correct figure was actually $6,313. According to Debtors' counsel, the significant decrease in Debtors' stated expenses resulted from amended Schedule J overstating their home mortgage payments. These figures put forth by Debtors' counsel would result in a monthly deficit of $74.

During the evidentiary hearing, the UST reaffirmed its original position that Debtors' expenses for their children's education, skating, baseball, and soccer, as well as home maintenance were excessive. She also argued that Mrs. Golematis impermissibly makes monthly voluntary 401(k) contributions between $250 and $270, and that Debtors' should not be making $500 monthly payments on the $9,000 unsecured debt that was incurred when Mr. Golematis bought his law practice. After the court makes necessary

adjustments to Debtors' expenses, the UST believes they will have sufficient disposable income to finance a chapter 13 plan of reorganization.

Authority to dismiss a case under chapter 7 for abuse is derived from § 707(b)(1), which provides in part:

> "After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter."

Under § 707(b)(3)(B), when bad faith is not a factor, courts examine the totality of the circumstances in determining whether the debtor's financial situation constitutes abuse warranting dismissal. The UST carries the burden of establishing by a preponderance of the evidence the applicability of this ground for dismissal. In the Sixth Circuit a totality of the circumstances inquiry under § 707(b)(3)(B) involves an analysis of whether the debtor displays a lack of honesty or want of need, either of which alone may provide sufficient justification for dismissal. *In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434 (6th Cir. 2004). In this case, the UST does not allege that Debtors display a lack of honesty. Instead, the UST questions whether Debtors are in need of relief under chapter 7.

In determining whether a debtor is sufficiently needy to justify granting relief under chapter 7, this Court analyzes whether the debtor has an ability to repay its unsecured nonpriority creditors. *Krohn*, 886 F.2d at 126. This analysis allows consideration of both prepetition and postpetition circumstances. *U.S. Trustee v. Cortez*, 457 F.3d 448, 455 (5th Cir. 2006)("Section 707(b) does not condition dismissal on the *filing* of bankruptcy being [an abuse] but rather on the *granting of relief*, which suggests

that in determining whether to dismiss under § 707(b), a court may act on the basis of any development occurring *before* the discharge is granted"). A debtor's ability to pay is assessed by looking to the amount of disposable income the debtor has available, and whether that income could feasibly finance a chapter 13 plan of reorganization.

A debtor's "disposable income" is defined as that income received by a debtor that is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. 11 U.S.C. § 1325(b)(2). This determination is made by the Court, and thus, when assessing the amount of disposable income available to a debtor, the Court is not required to accept at face value the financial figures put forth by the debtor. *In re Gonzalez*, 378 B.R. 168, 173 (Bankr. N.D. Ohio 2007). Instead, in its role as trier-of-fact, the Court may make downward adjustments in a debtor's expenses where it is determined that such expenses are not reasonably necessary. *Id.* While a debtor is not required to live in poverty to defeat a § 707(b)(3) motion to dismiss, he may still be required to engage in some good, old-fashioned belt tightening. *Krohn*, 886 F.2d at 128. In this case, after the Court adjusts Debtors' expenses, it becomes apparent that they have sufficient disposable income to finance a chapter 13 plan of reorganization.

### A. Debtors' Expenses

#### 1. Private School Tuition

Private school tuition payments are reasonably necessary expenses when some compelling circumstance exists. *In re Webb*, 262 B.R. 685, 690 (Bankr. E.D. Tex. 2001). A compelling circumstance exists if a child has a particular educational need that requires

private schooling, or if the public school alternative would be academically inadequate. *Id.* at 691-692. *In re Webb* involved the archetypical compelling circumstance. In *Webb*, the court held that a compelling circumstance existed where debtor's son had Attention Deficit Hyperactive Disorder and moderate to severe Generalized Anxiety Disorder which prevented him from assimilating into a public school environment. *Id.* at 690-691. A medical doctor who specialized in child and adolescent psychiatry even testified that the student's impairments placed him at risk for substance abuse, and that the student's academic progress would be impeded in a public school. *Id.* at 688.

Mere preference for private schooling is not sufficient. Consider *In re Watson*, 299 B.R. 56 (Bankr. D. R.I. 2003), *aff'd* 403 F.3d 1 (1st Cir. 2005), the facts of which closely parallel the case at bar. Debtors in that case, devout Catholics, spent $750 per month for parochial school tuition for their two minor children. *In re Watson*, 299 B.R. at 57. They did not claim their children's educational needs required private schooling, but instead simply wanted their children educated within a religious atmosphere. *Id.* at 58. In affirming the courts below that found debtors' parochial school tuition payments not reasonably necessary, The First Circuit Court of Appeals wrote,

> "We can appreciate the importance attached by the Watsons to the religious values of a parochial school education. Still, it is not impossible to inculcate those values outside of a school, and the court could reasonably conclude, in the circumstances presented here, that it would be improper to impose the added expense on the Watsons' unpaid creditors where the children's educational needs could otherwise be met in the public schools." 403 F.3d at 8.

A debtor is not required to prove the existence of a special educational need, because a compelling circumstance also exists when the public school alternative is shown to be academically inadequate. *In re Webb*, 262 B.R. at 691-692. Many cases have been decided because the debtor failed to make this showing. For example, in *In re*

*MacDonald*, 222 B.R. 69, 72 (Bankr. E.D. Pa. 1998), the court found that spending $175 per month for parochial school tuition was not reasonably necessary because the debtors did not claim the local public schools were deficient. Similarly, the Court in *Univest-Coppell Village, Ltd. V. Nelson*, 204 B.R. 497, 500 (E.D. Tex. 1996), based its finding that $395 per month parochial school tuition payments were not reasonably necessary on the fact that debtors' older daughter attended public school and that the debtor-father stated he did not have problems with the education offered there.

However, even if no compelling circumstance exists, one unpublished yet often-cited case, *In re Grawey*, 2001 WL 34076376 (Bankr. C.D. Ill. Oct. 11, 2001), held that private school tuition payments can be reasonably necessary expenses if they are financed by eliminating other reasonably necessary expenses from the family budget. In that case, the court found private school tuition payments for debtor's two children were reasonably necessary expenses because they were financed by sacrificing the family's health care insurance.

In this case, Debtors do not claim their children's educational needs require private schooling, nor do they identify scholastic shortcomings of their public school. Like the debtors in *Watson*, Debtors' reason for sending their children to private school is chiefly ideological rather than educational. Also, nothing suggests Debtors forego reasonably necessary expenses to be able to pay for private school. Therefore, Debtors' private school tuition payments are not reasonably necessary expenses, and this Court must add $295.85 a month to their income. The fact Debtors reduced their monthly private school tuition expenses from $1000 (as reflected on Schedule J) to the much more

reasonable amount of $295.85 (as reflected on Amended Schedule J) while commendable, does not change the Court's conclusion.

2. Children's Figure Skating, Baseball and Soccer

Although they are not entirely consistent, § 707(b)(3) cases suggest when a recreation expense is excessive. On the one extreme, in *In re Traux*, 446 B.R. 638, 644 (S.D. Ga. 2010), debtor's monthly $1,000 recreation expense was deemed excessive. More moderate monthly recreation expenses of $435, $300, $250, and $200 plus a $375 annual expenditure for summer camps, have also been found excessive. *See*, *e.g.*, *Krohn*, 886 F.2d at 127 ($435 monthly recreation expense for individual debtor was excessive); *In re Wolf*, 390 B.R. 825, 833 (Bankr. D. S.C. 2008) ($300 monthly recreation expense for single debtor was excessive); *In re Newsom*, 69 B.R. 801, 805 (Bankr. D. N.D. 1987) ($250 monthly recreation budget for debtor couple was unacceptable); *In re Srikantia*, 417 B.R. 505, 513 (N.D. Ohio 2009) (debtor's monthly expenditures of $120 for art lessons and $80 for drum lessons for his son, plus $375 for his son's summer camps, were in the aggregate found excessive). *In re Goodson,* 130 B.R. 897, 907 (Bankr. N.D. Okla. 1991) even held that a $100 monthly recreation expense for a lone debtor was excessive. However, *Goodson* is the exception rather than the rule. In *In re Keating*, 298 B.R. 104, 111 (Bankr. E.D. Mich. 2003) the court found that a $100 monthly recreation expense for an individual debtor was reasonable. Similarly, the court in *In re Stone*, 441 B.R. 274, 276 (N.D. Ohio 2010) determined that a monthly recreation expenditure of $130 for a single debtor was not excessive.

In this case, the UST objected to Debtors' monthly recreation expense of $400 for their children's figure skating, baseball, and soccer. This expense appears to be excessive, but by the time of the evidentiary hearing, the Debtors cut this expense to $200. Parameters of the amounts in the previously cited case law strongly suggest that a monthly recreation expense of $200 for two people is not excessive, and as such is not includable in Debtors' disposable income.

### 3. Mrs. Golematis' 401(k) Contributions

This Court has explicitly rejected adopting a *per se* rule requiring the inclusion of 401(k) contributions in disposable income. *In re Beckerman*, 381 B.R. 841, 848 (Bankr. E.D. Mich. 2008). Instead, as is required by the plain language of § 707(b)(3) and this Court's interpretation of Sixth Circuit precedent, the reasonableness of a debtor's 401(k) contributions must be determined on a case-by-case basis looking at the totality of the debtor's individual circumstances. *Id.* at 848. In this case, the amount of Mrs. Golematis' existing retirement savings, as well as her age and time left until retirement, dictate that her voluntary 401(k) contributions are reasonably necessary for her maintenance or support, and are therefore not included in her disposable income.

The factor most relevant to the determination of whether voluntary 401(k) contributions are necessary for the maintenance or support of the debtor is the amount of the debtor's existing retirement savings or other retirement provisions. The more of such a debtor has, the less likely this Court is to find these payments excludable from disposable income.

For example, in *In re Zaporski*, 366 B.R. 758, 770-71 (Bankr. E.D. Mich. 2007), the Court determined that the debtor's 401(k) contributions should be treated as disposable income because he had a very substantial retirement nest egg set aside, which included a 401(k) valued at $128,229 and a pension of $102,500. Also, the Sixth Circuit in *In re Behlke*, 358 F.3d 429, 436 (6th Cir. 2004) included the debtors' voluntary monthly 401(k) contributions in their disposable income because at the time of filing the debtors had retirement savings of $48,200, owned their own home (which had $10,000 of equity), and held stock options on 1,025 shares of Newell Rubbermaid stock.

On the other hand, *In re Beckerman*, 381 B.R. at 843, involved debtors who only had $7,036 in retirement savings and were therefore permitted to have 401(k) contributions excluded in determining their ability to repay creditors. Similarly, in *In re Ray*, 325 B.R. 193, 195 (Bankr. E.D. Mich. 2005) the Court held that the debtor's monthly contributions should not be considered disposable income because her only sources of retirement savings were a retirement plan valued at $31,975 and a very small pension.

Other factors relevant to the determination of whether voluntary 401(k) contributions are necessary for the maintenance or support of the debtor are the debtor's age and time left until retirement. The younger the debtor, the less likely the Court is to find these contributions excludable from disposable income.

Consider *In re Kehl*, 463 B.R. 19, 23 (Bankr. E.D. Mich. 2011), where the debtors were only in their early thirties. Partly because retirement was in their distant future, the Court held that the monthly 401(k) contributions should be included in disposable income. Likewise, in *Hebbring v. U.S. Trustee*, 463 F.3d 902, 908 (9th Cir. 2006), the

court stressed the young age of the 31-year-old debtor in its finding that she was not permitted a deduction for voluntary 401(k) contributions.

In this case, Mrs. Golematis has $14,559 in retirement savings. At 45-years old, she is not that close to retirement, but is over a decade older than the debtors in *Kehl* and *Hebbring*. Her relatively modest retirement savings and her age persuade the Court that her 401(k) contributions are not includable in her disposable income.

### 4. Home Maintenance

Debtors' "home maintenance" expense includes both home repairs and general home maintenance.

Not surprisingly, if a home repair is reasonably necessary to make a home habitable, then the expense is not included in disposable income. The case *In re Sullivan*, 370 B.R. 314, 322 (Bankr. D. Mont. 2007) involved various home repairs, only some of which were reasonably necessary to make the home habitable. The debtors in that case attempted to deduct from their disposable income expenses incurred in repairing their furnace, outdoor deck, fence, and driveway. *Id.* The Court only excluded from debtors' disposable income the expense incurred in repairing the furnace, reasoning that it was the only repair reasonably necessary to make the home habitable. *Id.*

An expense incurred on general home maintenance is excluded from disposable income, as long as it is not excessive. With the exception of one case, *In re Siemen*, 294 B.R. 276 (Bankr. E.D. Mich. 2003), where a $240 monthly home maintenance expense was found unreasonable, this expense must exceed $300 per month to be considered

excessive. See, e.g., *In re Camp*, 416 B.R. 304, 312 (Bankr. E.D. Tex. 2009) (monthly $300 home maintenance expense found not excessive); *In re Summer*, 255 B.R. 555, 558 (S.D. Ohio 2000) ($320 housekeeping expense was excessive); *In re Ricci*, 456 B.R. 89, 106 (Bankr. M.D. Fla. 2009) (monthly home maintenance expense of $402 was excessive); *In re Crink*, 402 B.R. 159, 172 (Bankr. M.D. N.C. 2009) (home maintenance expense of $480 a month patently unreasonable).

Debtors list a monthly expense of $266 for home maintenance on Schedule J. According to testimony offered at the evidentiary hearing, $120 of this is used to pay off a $7400 debt that was incurred last year when the family's roof was repaired. The remaining $146 per month is spent on general home maintenance. Both of these expenses are reasonably necessary. Without the roof repair, Debtors' house would not be habitable. Indeed, testimony was given that before the repair, their roof was down to just the felt paper. Also, the $146 Debtors spend on monthly general home maintenance is much less than what courts have found excessive. Therefore, none of their $266 home maintenance expense is includable in their disposable income.

5. Law Practice

Equality of distribution among creditors is a central policy of the Bankruptcy Code. According to that policy, creditors of equal priority must receive pro rata shares of the debtor's property. 11 U.S.C. § 726(b).

In this case, Debtors have chosen to fully pay a $9,000 unsecured debt incurred when Mr. Golematis bought his law practice, while simultaneously paying nothing to

11
11-52238-wsd    Doc 51    Filed 08/17/12    Entered 08/17/12 16:54:25    Page 11 of 13

their other unsecured creditors. While given Mr. Golematis is a lawyer and likely therefore feels somewhat stronger about paying such a debt in preference to others, that does not trump the indicated more important policy, particularly when the amounts involved in this case are considered. After disallowing this monthly expense, $500 more per month becomes available to fund a hypothetical chapter 13 plan. Over the life of a 5-year plan, this amounts to $30,000 that would be available for unsecured creditors.

### B. Ability to Fund Chapter 13 Plan of Reorganization

A chapter 7 case is subject to dismissal for abuse if the debtor can pay a meaningful dividend to his nonpriority unsecured creditors under a hypothetical chapter 13 plan. *In re Behlke*, 358 F.3d at 435. After adjusting Debtors' expenses to reflect that their $295.85 monthly tuition payments and $500 monthly payments for Mr. Golematis' law practice are not reasonably necessary, Debtors total disposable income over 60 months becomes $43,311 (computed by adding $295.85 per month + $500 per month less the original $74 monthly deficit = $721.84 per month x 60 months). Since Debtors' total nonpriority unsecured debt is $39,515, they have the ability to pay a 100% dividend to their nonpriority unsecured creditors in a chapter 13 plan of reorganization. Therefore, since Debtors have an ability to pay and are not in need of relief under chapter 7, the UST's motion to dismiss pursuant to §707(b)(3) is GRANTED.

The moving party shall prepare and present an order which affords Debtors a reasonable period, the duration of which shall be spelled out in the order, within which to convert to a chapter 13 case, if they so choose.

12
11-52238-wsd    Doc 51    Filed 08/17/12    Entered 08/17/12 16:54:25    Page 12 of 13

.

**Signed on August 17, 2012**

                                                          **/s/ Walter Shapero**
                                                          **Walter Shapero**
                                                          **United States Bankruptcy Judge**